UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-10680-MWC-PVC Date: April 30, 2026

Title: Liberty Mutual Insurance Co. v. Allstate Insurance Co.

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (IN CHAMBERS) ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING AS MOOT DEFENDANT'S REQUESTS FOR JUDICIAL NOTICE; AND OVERRULING AS MOOT BOTH PARTIES' EVIDENTIARY OBJECTIONS (DKTS. [49] & [50])**

Before the Court are the parties' cross-motions for summary judgment ("cross-motions"). Defendant Allstate Insurance Company ("Allstate" or "Defendant") filed its motion for summary judgment ("motion" or "MSJ"), Dkt. # 49 ("*Def.'s MSJ*"), and in support of its motion: a Request for Judicial Notice, Dkt. # 49-2 ("*Def.'s RJN*"); a Separate Statement of Undisputed Facts, Dkt. # 49-3; and the Declarations of Cherie M. Sutherland, Dkt. # 49-4 ("*Sutherland Decl.*") and Michael O'Donnell, Dkt. # 49-5 ("*O'Donnell Decl.*"), with exhibits attached to both declarations. Plaintiff Liberty Mutual Insurance Company ("Liberty Mutual" or "Plaintiff") opposed, Dkt. # 51 ("*Pl.'s Opp.*"), and in support of its Opposition, filed: the Declaration of Timothy Rosier, Dkt. # 51-1 ("*Rosier Decl.*"), with exhibits attached thereto; the Declaration of Norman Lau, Dkt. # 51-12 ("*Lau Decl.*"), with exhibits attached thereto; Objections to Defendant's Evidence, Dkt. # 51-30 ("*Pl.'s Evid. Objs.*"); and its Statement of Genuine Issues of Material Fact and Conclusions of Law in Dispute, Dkt. # 51-31. Defendant replied, Dkt. # 53 ("*Def.'s Reply*") and attached its Response to Plaintiff's Statement of Genuine Disputes, Dkt. # 53-1 ("*DUMF*"), and its Objections to Plaintiff's Evidence in Support of its Opposition, Dkt. # 53-2 ("*Def.'s Evid. Objs.*").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-10680-MWC-PVC Date: April 30, 2026

Title: Liberty Mutual Insurance Co. v. Allstate Insurance Co.

Plaintiff filed a concurrent motion for summary judgment ("motion" or "MSJ"). Dkt. # 50 ("*Pl.'s MSJ*"). In support of its motion, Plaintiff attached its Statement of Uncontroverted Facts and Conclusions of Law, Dkt. # 50-2; the Declaration of Timothy Rosier, Dkt. # 50-3 ("*Rosier Decl.*") with exhibits attached thereto; and the Declaration of Norman Lau, Dkt. # 50-14 ("*Rau Decl.*") with exhibits attached thereto. Defendant opposed, Dkt. # 52 ("*Def.'s Opp.*"), and filed: Objections to Plaintiff's Evidence, Dkt. # 52-1 ("*Def.'s Evid. Objs.*"); its Statement of Genuine Disputes in Opposition to Plaintiff's Motion, Dkt. # 52-2 ("*PUMF*"); the Declaration of Cherie M. Sutherland, Dkt. # 52-3 ("*Sutherland Decl.*"), with exhibits attached thereto; the Declaration of Michael O'Donnell, Dkt. # 52-19 ("*O'Donnell Decl.*") with exhibits attached thereto; and its Request for Judicial Notice, Dkt. # 52-26 ("*Def.'s RJN in Opp.*"). Plaintiff replied, Dkt. # 54 ("*Pl.'s Reply*") and attached Objections to Defendant's Evidence, Dkt. # 54-1 ("*Pl.'s Evid. Objs.*").

The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. After considering the papers and all evidence set forth, the Court **GRANTS** Defendant's Motion for Summary Judgment (Dkt. # 49), **DENIES** Plaintiff's cross-Motion for Summary Judgment (Dkt. # 50), **DENIES AS MOOT** Defendant's Requests for Judicial Notice, and **OVERRULES AS MOOT** the parties' respective evidentiary objections.

## I. Factual Background[1]

This insurance litigation arises after a residential housekeeper fell into a hole in the ground of her employers' home while performing work for them. *See* Second Am. Compl.,

[1] All facts that follow are undisputed by the parties unless otherwise noted. The Court derives the following facts from Defendant's Statement of Genuine Disputes in Opposition to Plaintiff's Motion, Dkt. # 52-2 ("*PUMF*"), as Plaintiff did not reply to Defendant's responses, in violation of C.D. Cal. Local Rule 56-3 ("Any moving party who files a reply to an opposition to a motion for summary judgment or partial summary judgment **must** file a 'Response to Statement of Genuine Disputes,' . . .") (emphasis added). The Court also derives the facts from Defendant's Response to Plaintiff's Statement of Genuine Disputes, Dkt. # 53-1 ("*DUMF*"), as this contains Defendant's proffered facts, Plaintiff's responses, and Defendant's replies. The Court focuses only on those facts that are material and relevant to this action. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where uncontested, the Court will not provide parallel citations to the same fact proffered by the opposing party.

Dkt. # 30 ("*SAC*") ¶¶ 9, 15–19. As a result, the housekeeper suffered several physical injuries and sought to obtain workers' compensation coverage from Allstate. *Id.* ¶¶ 20–25. After Allstate denied the claim, the housekeeper filed a civil lawsuit against her employers in state court, resulting in a settlement that triggered the employers' excess insurance under Liberty Mutual ("underlying action"). *Id.* ¶¶ 25, 43. Liberty Mutual now seeks equitable subrogation from Allstate for its settlement payment.

A. The Allstate Policy

This case implicates two insurance policies tendered to Jack and Norma Mitchell ("the Mitchells"): a Deluxe Homeowner's Policy under Allstate ("Allstate Policy"), effective from December 29, 2021 to December 29, 2022, *PUMF.* ¶ 3, and a Liberty Mutual Personal Liability Protection policy, effective from September 24, 2021 to September 24, 2022 ("Liberty Mutual Policy"). *Id.* ¶ 1. The Allstate Policy provided liability coverage with limits of $300,000 per occurrence and provided Workers' Compensation and Employers' Liability Coverage for Residence Employees, *id.* ¶¶ 4 & 6, while the Liberty Mutual Policy provided excess liability coverage with limits of $1 million per occurrence. *Id.* ¶ 2.

The Allstate Policy provides, in pertinent part:

> **California**
> **Workers' Compensation And Employers' Liability Coverage for Residence Employees Coverage Form—AP1127**
>
> THIS COVERAGE FORM AMENDS THE FOLLOWING ALLSTATE INSURANCE COMPANY AND ALLSTATE INDEMNITY COMPANY POLICIES: Deluxe, Deluxe Plus, Standard Homeowners, Condominium and Renters
>
> **Part A — Coverages Defined**
> When "Workers' Compensation and Employers' Liability Coverage For Residence Employees" appears on the Policy Declarations (Coverage WC), the following coverages apply:
>
> **Coverage I: Workers' Compensation**

> With respect to a **residence employee,**[2] **Allstate** will pay on behalf of an **insured person** as an employer of a **residence employee** all benefits when due as required by the California Workers' Compensation Law. At a minimum, such benefits will be equivalent to those benefits in the standard workers' compensation policy issued in California. If benefits prescribed by a state other than the State of California apply, **Allstate** will pay those instead; and
>
> **Coverage II: Employers' Liability**
> With respect to a **residence employee, Allstate** will pay on behalf of an **insured person**, all damages for which an **insured person** is legally liable because of **bodily injury** sustained by a **residence employee**. This coverage, however, does not apply to any suit brought or judgment or to any action on such judgment rendered by any court outside of the United States of America, its territories and possessions, or Canada.

Ex. 11(b) to *Lau Decl.*, Dkt. # 50-16 ("*Allstate Policy*") at 38 (boldface and capitalizations in original).

Just below this section, the Allstate Policy clarifies:

> **Residence employee**, however, does not include an employee, who, during the 90 calendar days immediately preceding the date of their injury,
>
> (1) engaged in such employment for less than 52 hours; or
>
> (2) earned less than $100 in wages.

---

[2] The Policy defines a "Residence employee" as "an employee of an **insured person** while performing duties arising out of and in the course of employment in connection with the maintenance or use of **your residence premises**. This includes similar duties performed elsewhere for an **insured person**, not in connection with the **business** of an **insured person**." Ex. 11(b) to *Lau Decl.*, Dkt. # 50-16 at 11 (boldface in original) & 39. The "Residence premises," in turn, includes "the **dwelling**, other structures and land located at the address stated on the Policy Declarations." *See id.* (boldface in original). It is undisputed the address stated in the Policy Declarations belongs to the Mitchells. *See* Ex. 11(a) to *Lau Decl.*, Dkt. # 50-15 at 12; *PUMF* ¶ 10.

*Allstate Policy* at 39 (boldface in original).

It is undisputed that Allstate's Policy does not prohibit coverage to a "residence employee" paid in cash. *See generally id.*; *see also PUMF* ¶ 13. Further below this section, the Allstate Policy provides the limits of liability, stating:

> **Limits of Liability — Coverage II:**
> **Our** total limit of liability shall not exceed ######## for all damages because of **bodily injury**:
>
> a. sustained by one or more **residence employees** in any one accident; or
> b. caused by disease and sustained by a **residence employee**.

*Allstate Policy* at 40 (boldface in original).

B. Underlying Incident

The Mitchells employed Sara Spitz ("Spitz") as a housekeeper in their Los Angeles home for over forty (40) years. *See PUMF* ¶¶ 1, 10, 14–15; *DUMF* ¶¶ 1–2. Spitz worked at the Mitchells' home once or twice a week for at least six (6) hours total, earning between $100 and $500 weekly by personal check. *See PUMF* ¶ 16; *DUMF* ¶¶ 1.[3] It is undisputed that in the ninety (90) days preceding January 4, 2022, Spitz worked more than fifty-two (52) hours and earned more than $100 in wages as the Mitchells' housekeeper. *See PUMF* ¶ 17; *DUMF* ¶ 1. On January 4, 2022, Spitz was providing housekeeping services at the Mitchells' residence when she stepped into a hole on the deck just outside the kitchen door

[3] Though Defendant's motion and DUMF only cite to Plaintiff's operative Complaint in support of these assertions, this is permissible. *See Prepaid Teleconnect, Inc. v. Murrieta*, EDCV 15-2062-VAP (KKx), 2016 WL 1622609, at *3 (C.D. Cal. Apr. 21, 2016) ("A statement in an opposing party's pleadings qualifies as an admission, rendering it admissible for purposes of summary judgment. . . . the Court has considered statements in Plaintiff's Complaint, as they qualify as admissions under Rule 56(c)(1)(A).") (collecting caselaw); *Garcia v. Mata*, No. CV 11-6799 DSF (JC), 2012 WL 5499938, at *1 n.4 (C.D. Cal. Oct. 10, 2012) ("[D]efendant may rely on plaintiff's allegations in the First Amended Complaint to support summary judgment to the extent such allegations are not controverted by plaintiff."), *R. & R. adopted*, 2012 WL 5499925 (C.D. Cal. Nov. 9, 2012).

and fell to the ground, sustaining serious injuries. *See PUMF* ¶¶ 23–24; *DUMF* ¶ 1. After her fall, Spitz was unable to stand up on her own and was thereafter transported to the hospital. *PUMF* ¶¶ 26–27; *DUMF* ¶ 1. Spitz's injuries required that she undergo two surgeries. *See PUMF* ¶ 28; *DUMF* ¶ 1.

C. Spitz's Workers' Compensation Claim Denial

At some point after Spitz's fall, a report was made to Allstate. *PUMF* ¶¶ 29–31.[4] Jack Mitchell reported to Allstate that Spitz was the Mitchells' housekeeper. *Id.* ¶¶ 32–33.[5] Allstate did not advise Jack Mitchell of the availability of workers' compensation coverage. *Id.* ¶ 37. On August 23, 2022, Yoon Kim from the Barnes Firm sent a Letter of Representation ("LOR") to Allstate in connection with the January 4, 2022 incident. *Id.* ¶ 39; *DUMF* ¶ 5. The LOR constitutes Allstate's first record of the incident, and upon receipt of the LOR, Allstate opened a claim thereafter. *See PUMF* ¶¶ 40–41. On August 25, 2022, Jack Mitchell informed Allstate's claim adjuster, Evan Pastorelle, that Spitz worked for the Mitchells as their housekeeper on a weekly basis for the past forty (40) years, and that she sustained work-related injuries while doing so. *See id.* ¶¶ 42–44.[6]

[4] The parties dispute who made this report—*i.e.*, whether Jack Mitchell first reported Spitz's fall to Allstate, or alternatively, whether Spitz's attorney notified Allstate in an August 23, 2022 letter. *See PUMF* ¶ 29. This factual dispute is immaterial and unnecessary to the outcome of the case. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Jelinek v. Am. Nat'l Prop. and Cas. Co.*, 747 F. App'x 513, 514 (9th Cir. 2018); *see also Anderson*, 477 U.S. at 248.

[5] The parties dispute *when* exactly Jack Mitchell submitted this report to Allstate. Defendant disputes that Mitchell made this report prior to August 23, 2022. *See PUMF* ¶¶ 32–33. This factual dispute is also irrelevant and unnecessary to the outcome of the case. *See Fresno Motors*, 771 F.3d at 1125; *Jelinek*, 747 F. App'x at 514; *see also Anderson*, 477 U.S. at 248.

[6] At this point, Plaintiff sets forth that "[o]n August 25, 2022, Allstate determined there were no workers' compensation concerns with Spitz's claim because she was paid in cash." *PUMF* ¶ 45. However, as Defendant correctly points out, "[t]he evidence cited does not support the purported fact." *Id.* In support of its assertion, Plaintiff directs the Court to the deposition excerpt of Jack Mitchell. *See id.*; *see also* Dep. Tr. of Jack Mitchell, Ex. 14 to Lau Decl., Dkt. # 50-19 ("*Mitchell Dep. Tr.*") at 36:4–25. Upon review of the cited portions of this deposition testimony, Mr. Mitchell does not testify, either directly or circumstantially, to this fact. *See Mitchell Dep. Tr.* at 36:4–25. The cited evidence therefore does not support Plaintiff's assertion and the Court declines to "scour

On August 26, 2022, Allstate assigned Ethos Risk Services, LLC ("Ethos") to investigate Spitz's claim. *PUMF* ¶ 48. On September 7, 2022, Ethos inspected the Mitchells' residence in connection with Spitz's fall and took Mr. Mitchells' statement. *Id.* ¶ 49. Jack Mitchell informed Ethos that Spitz was their long-term housekeeper and that she was injured while performing work for them. *Id.* ¶ 50.[7] On September 8, 2022, Ethos informed Allstate of the outcome of its investigation. *Id.* ¶ 51. Ethos's Final Investigation Report stated, in part: "To summarize, Jack Mitchell said that the woman involved, named Sarah, has worked for them for 45 years as a private contractor." *DUMF* ¶ 6 (cleaned up).[8] On August 26, 2022, August 29, 2022, August 31, 2022, September 2, 2022, and October 24, 2022, Evan Pastorelle attempted to communicate with Spitz and the Barnes Firm regarding Spitz's eligibility for workers' compensation benefits, but did not receive a response. *PUMF* ¶ 52; *DUMF* ¶ 9.[9]

---

the record in search of" this fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citations omitted); *Perez v. City of Fresno*, 591 F. Supp. 3d 725, 737 (E.D. Cal. 2022) ("The parties have the obligation to particularly identify material facts, and the court is not required to scour the record in search of a genuine disputed material fact."). Because the cited evidence does not support Plaintiff's fact, the Court will not consider it. *See Uche-Uwakwe v. Shinseki*, 972 F. Supp. 2d 1159, 1165, 1170 (C.D. Cal. 2013) ("The following portion is not supported by the cited evidence and the Court will not consider it: . . .").

[7] Defendant disputes Plaintiff's use of the word "employment" in its *PUMF*. For reasons stated further below, this dispute is immaterial for the purposes of assessing the parties' cross-motions.

[8] Plaintiff does not dispute that the report contains this quoted statement but disputes that Spitz worked as a private contractor for the Mitchells, and instead, characterizes her as an employee. *See DUMF* ¶ 6. This is an unnecessary fact dispute. *See supra* n.7.

[9] Though Plaintiff's *PUMF* sets forth that "[f]ollowing Ethos'[s] investigation, Allstate still did not consider Spitz's eligibility for workers' compensation benefits under the Allstate Primary Policy," *PUMF* ¶ 52, Plaintiff's cited evidence does not support this contention, and instead, appears to support Defendant's position that Pastorelle contacted the Barnes Firm on several occasions. *Cf. Uche-Uwakwe*, 972 F. Supp. 2d at 1165, 1170.

First, Plaintiff cites to Exhibit 24 attached to Lau's Declaration in support of this fact. *See id.* This exhibit is a copy of Allstate's electronic claim notes from Allstate's file. *See Lau Decl.* ¶ 16; *see also* Ex. 22 to *Lau Decl.*, Dkt. # 50-29 ("*Allstate File*"). Upon review of the claim notes in the file, the record reflects that on August 24, 2022, Allstate opened a claim for Sara Spitz, *id.* at 10

On November 25, 2022, Allstate acknowledged that Spitz may qualify as a residence employee, and on that same date, submitted and referred a Domestic Workers' Compensation Loss Report and claim to its third-party administrator, Sedgwick Claims Management Services, Inc. ("Sedgwick") to verify Spitz's eligibility to receive workers' compensation benefits under the Allstate Policy. *PUMF* ¶¶ 53–54.

The parties do not dispute that on November 25, 2022, Allstate acknowledged that Spitz may qualify as a residence employee and concurrently referred a Domestic Workers' Compensation Loss Report and claim to Sedgwick to verify Spitz's eligibility under Allstate's Policy. *See DUMF* ¶ 7; *PUMF* ¶¶ 53–54. The parties also do not dispute that Sedgwick sent Spitz a letter on November 29, 2022, stating, in relevant part:

> Employee Sara Spitz
> Employer The Allstate Corp-TPA Program
>
> . . . .
>
> Sedgwick is the workers' compensation claims administrator for the above employer and insurer.

---

("New claim opened . . ."); that on that same day, Allstate assigned the claim to an adjuster; *id.*; and that Evan Pastorelle attempted to contact Spitz and the Barnes Firm on several occasions from August through October 2022. *See id.* at 4–8. Plaintiff's own evidence undermines this factual assertion.

Moreover, Plaintiff failed to properly contest this fact in opposition to Defendant's motion. To support this fact in its own motion, Defendant cites to the deposition testimony of John Sheehan, as well as to Allstate's claim file notes. *See DUMF* ¶ 9. However, Plaintiff only disputes the contents of John Sheehan's deposition excerpt; Plaintiff fails to address or proffer evidence to dispute Defendant's citation to Allstate's claim file notes. *See id.* Upon review of Allstate's claim file notes, the Court is satisfied that Evan Pastorelle *did* attempt to contact Spitz and the Barnes Firm on several occasions. The Court deems this fact undisputed for the purposes of this motion. Fed. R. Civ. P. 56(e)(2).

> Our role is to determine if your claim qualifies under the workers' compensation law, and, if it does, assist in timely managing your benefits. . . .
>
> You can help us with your claim by taking the following steps:
>
> . . . . Complete the Authorization for Release of Medical Information form right away, along with any other forms enclosed, and return to us. . . .

Ex. 18 to *Sutherland Decl.*, Dkt. # 49-4 ("*Nov. 2022 Sedgwick Letter*") at 75–76; *DUMF* ¶ 8.[10]

It is also undisputed that on December 13, 2022, Sedgwick sent a second letter to Spitz informing her, [11] in pertinent part:

> **NOTICE REGARDING DELAY OF WORKERS' COMPENSATION BENEFITS**
>
> Sedgwick is handling your workers' compensation claim on behalf of The Allstate Corp-TPA Program. . . .
>
> Workers' compensation benefits are being delayed because we have not received your medical records. In order to make a decision, we need all of your medical records. **We will notify you of our decision on or before 2/22/2023.**
>
> To resolve this issue and allow me to make a determination on your entitlement to benefits, a comprehensive medical evaluation is needed.

[10] Plaintiff does not dispute that Sedgwick sent Spitz this letter, however, Plaintiff disputes "Allstate's characterization of the letter," contesting that it is "a form letter that does not communicate clearly the need to fill out the enclosed form." *See DUMF* ¶ 8. Plaintiff does not support this dispute with any countering evidence under Rule 56(c), and the letter *does* clearly ask Spitz to complete an authorization form. *See November Sedgwick Letter*. Accordingly, the Court considers this fact undisputed for the purposes of this motion. Fed. R. Civ. P. 56(e)(2).

[11] The parties dispute whether Sedgwick also sent these letters to Spitz's counsel, *see PUMF* ¶¶ 57–59, however, these disputes are not necessary to resolving the instant cross-motions.

> Enclosed is a form that you must submit to the state Division of Workers' Compensation (DWC) within **10 days** to request a panel of three Qualified Medical Evaluators (QMEs). If you do not submit the form within **10 days** we will have the right to submit the form. In addition, within **10 days** after the DWC sends you a panel, you must choose a QME from the panel, make an appointment to be examined by the QME, and inform me of your choice and appointment time. . . .

Ex. 24 to *Sutherland Decl.*, Dkt. # 49-4 ("*Dec. 2022 Sedgwick Letter*") at 112–13 (first boldface and underlining added, remaining boldface in original).

It is undisputed that on the same date, Sedgwick provided Spitz with a form entitled, "State of California, Division of Workers' Compensation Request for Qualified Medical Evaluator Panel (Unrepresented Employee)" ("DWC Form"). *Id.* at 115–119; *PUMF* ¶ 59. On December 30, 2022, Purinton Law, Allstate's attorney, sent a Notice of Representation/Demand for Service to the Barnes Firm, advising of its representation of Allstate's interests. *Id.* ¶ 60. On January 3, 2023, Purinton Law left a voicemail for the Barnes Firm, and on January 10, 2023, Purinton Law inquired if Spitz's counsel had filed an application for the adjudication of Spitz's claim. *Id.* ¶¶ 61–62.

On February 16, 2023, Sedgwick denied Spitz's workers' compensation claim, stating:

> After careful consideration of all available information, we are denying liability for your claim of injury. Workers' Compensation benefits are being denied because based on our employer-level investigation, we have determined that your employer has no liability for the reported incident. After careful consideration of all available information, we deny all liability for your claim of injury based on lack of substantial medical evidence of an industrial injury, employment dispute per LC 3351-3352 et seq.

Ex. 14 to *O'Donnell Decl.*, Dkt. # 49-5 ("*Sedgwick Denial Letter*") at 148; *DUMF* ¶ 12.[12]

---

[12] Plaintiff again disputes "how Allstate is interpreting the denial," contending that "the denial was based on lack of industrial injury and due to a dispute over the claimant's employment status." *DUMF* ¶ 12. This is argument, however, and improper for a Separate Statement of Undisputed

The denial letter provided Spitz an option to challenge the decision within ten (10) days thereafter, and to "obtain a comprehensive medical evaluation" so long as she submit a DWC Form. *See Sedgwick Denial Letter* at 149. It is undisputed that neither Spitz nor Barnes responded to this denial letter. *DUMF* ¶ 13. Additionally, John Sheehan[13] testified, in part, that Sara Spitz's underlying superior court action against the Mitchells was "unrelated" to Sedgwick's February 2023 denial of her workers' compensation claim.[14] *See DUMF* ¶ 16; Dep. Tr. of John Sheehan, Ex. 16 to *Sutherland Decl.*, Dkt. # 49-4 ("*Sheehan Dep. Tr.*") at 11:17–22.[15] After Spitz initiated the underlying action, the Barnes Firm sent Allstate a Policy Limits/Time Limit Demand on April 10, 2024, demanding, in part, its "insured's policy limits" within thirty (30) days from the date of the letter. *See* Ex. 8 to *O'Donnell Decl.*, Dkt. # 49-5 at 110–115; *DUMF* ¶ 19.

Between November 6, 2022, and February 16, 2023, Allstate and Sedgwick did not communicate. *PUMF* ¶ 66. Before February 16, 2023, Allstate did not know Sedgwick planned on denying Spitz's workers' compensation claim, nor did Sedgwick notify Allstate that it eventually did deny Spitz's claim. *See id.* ¶¶ 67–68. On February 28, 2023, Allstate closed Spitz's claim. *Id.* ¶ 69.

---

Material Fact. The Court considers this fact undisputed for the purposes of this motion. Fed. R. Civ. P. 56(e)(2). In any event, this contention does not address the plain language of the denial letter, which clearly states that the denial was "based on lack of substantial evidence." *See Sedgwick Denial Letter*. Nowhere does the letter state that the denial was even partially the result of a dispute over Spitz's employment status. Plaintiff has not pointed to any evidence in support of this assertion.

[13] John Sheehan is the Person Most Knowledgeable for The Barnes Firm. *See DUMF* ¶ 14.

[14] Plaintiff once more does not dispute this testimony, but contests "this is argument disguised as uncontroverted fact[.]" *DUMF* ¶ 16. The Court disagrees. Defendant cited to deposition testimony, as required by Rule 56(c). Plaintiff does not proffer opposing evidence to dispute this fact. Fed. R. Civ. P. 56(c)(1)(A). Accordingly, the Court considers this fact undisputed for the purposes of this motion. Fed. R. Civ. P. 56(e)(2).

[15] The Court cites to the page and line numbers of the deposition transcript as opposed to CM/ECF pagination.

D. Underlying Litigation

On November 21, 2023, Spitz filed a civil lawsuit against the Mitchells in superior court. *PUMF* ¶ 71. On April 8, 2024, the Mitchells informed Allstate that Spitz had filed a lawsuit against them. *Id.* ¶ 73. On April 8, 2024, Allstate contacted Sedgwick for an update on Spitz's workers' compensation claim. *See id.* ¶¶ 75–76.[16] In April 2024, Sedgwick informed Allstate that Spitz's claim was denied and closed, and that it will remain closed unless Spitz retains a workers' compensation attorney and files an application with the Workers' Compensation Appeals Board. *See id.* ¶ 77.

On April 10, 2024, the Barnes Firm sent a time-limited policy-limit demand to Allstate with a thirty-day deadline. *Id.* ¶ 78. According to this demand, Spitz had incurred over $500,000 in past medical expenses outside of the workers' compensation system. *Id.* ¶ 79. The policy limit demand required a signed declaration from the Mitchells, confirming they had no assets and no other insurance. *Id.* ¶ 80. On April 18, 2024, the Mitchells informed Allstate of an umbrella policy through Liberty Mutual. *Id.* ¶ 81. On April 24, 2024, Liberty Mutual was notified of Spitz's claim and the policy-limit demand, and began its investigation shortly thereafter. *Id.* ¶ 82. On May 2, 2024, Liberty Mutual obtained information regarding Spitz's fall and Allstate's handling of the claim, directly from Allstate. *Id.* ¶ 83.

On May 10, 2024, Liberty Mutual obtained a recorded statement from Jack Mitchell, where he stated that he reported Spitz's fall to Allstate "way before" Spitz filed a claim, and that Spitz was performing housekeeping services when she was injured. *Id.* ¶¶ 84–85. On May 14, 2024, Liberty Mutual informed Allstate of its coverage concerns due to the applicability of workers' compensation coverage, but Allstate advised that it intended to tender its $300,000 limits regardless of the coverage concerns. *See id.* ¶ 86. On May 15, 2024, Liberty Mutual assessed the value of Spitz's claim to exceed $1.3 million. *Id.* ¶ 89. On June 13, 2024, Liberty Mutual tendered its $1 million excess liability limits to effectuate a settlement of Spitz's case, and accepted Spitz's April 10, 2024 policy-limit demand, which resulted in the dismissal of her case. *Id.* ¶¶ 90–91. Liberty Mutual

[16] The parties dispute whether Allstate contacted Sedgwick before this time, but for the reasons stated below, this dispute is unnecessary and immaterial. *See PUMF* ¶¶ 75–76.

demanded that Allstate reimburse it for its payment of its policy limits; Allstate refused to do so. *Id.* ¶ 92.

II. Procedural History

On December 11, 2024, Liberty Mutual initiated this lawsuit against Allstate. *See generally* Dkt. # 1. Plaintiff seeks, among other things, equitable subrogation from Allstate in the sum of $1 million and damages for Allstate's alleged breach of the implied covenant of good faith and fair dealing. *See SAC* at 13–16. Both parties have filed cross-motions for summary judgment. *See Def.'s MSJ*; *Pl.'s MSJ*. The motions are fully briefed and ripe for consideration and review.

III. Legal Standard

Summary judgment is appropriate under Rule 56 when the moving party demonstrates the absence of a genuine dispute as to any material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Idaho Conservation League v. Poe*, 86 F.4th 1243, 1246 (9th Cir. 2023). "A fact is 'material' only if it might affect the outcome of the case[.]" *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Jelinek v. Am. Nat'l Prop. and Cas. Co.*, 747 F. App'x 513, 514 (9th Cir. 2018); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgments."). Factual disputes that are irrelevant or unnecessary will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. On the other hand, "[a]n issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Airlines for Am. v. City and Cnty. of S.F.*, 78 F.4th 1146, 1152 (9th Cir. 2023) (internal quotation marks and citation omitted); *Fresno Motors*, 771 F.3d at 1125.

"To prevail at summary judgment, the defendant-movant must demonstrate that, even viewing the evidence in the light most favorable to the plaintiff, the plaintiff cannot satisfy its burden to prove its claims." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1159 (9th Cir. 2021) (internal quotation marks and citation omitted); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The movant "bears the burden of establishing the basis for its motion and identifying evidence that demonstrates the absence of a genuine issue of material fact." *Davis v. United States*, 854 F.3d 594, 599 (9th Cir.

2017) (citation omitted). A defendant-movant may satisfy its initial burden by either showing that the nonmoving party "does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial," *G and G Closed Circuit Events, LLC v. Liu*, 45 F.4th 1113, 1115 (9th Cir. 2022) (internal quotation marks and citation omitted), or alternatively, by "producing affirmative evidence negating an essential element of the nonmoving party's claim or defense." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105 (9th Cir. 2000).

On the other hand, when the plaintiff-movant "will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Rookaird v. BNSF Railway Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (quotation marks and citation omitted); *see also C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) ("When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.") (quotation marks and citation omitted). "In such a case, the moving party has the initial burden of establishing the absence of a genuine fact on each issue material to its case." *C.A.R. Transp.*, 213 F.3d at 480 (citation omitted). "The moving party need not disprove the other party's case." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (citation omitted).

If the movant satisfies its burden, the burden then shifts to the non-moving party to "designate specific facts demonstrating the existence of genuine issues for trial." *Oracle Corp.*, 627 F.3d at 387 (citation omitted). "The burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence" and more than "some metaphysical doubt as to the material facts at issue." *Id.* (internal quotation marks and citation omitted). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citation omitted); *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1122 (9th Cir. 2024) ("[T]here must be evidence on which the jury could reasonably find for the plaintiff. . . . The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict."). In other words, "the nonmoving party may not rest upon mere allegations or denials of his pleading[.]" *Zellmer*, 104 F.4th at 1122 (internal quotation marks and citation omitted); *see also C.A.R. Transp.*, 213 F.3d at 480 ("A motion for summary judgment may not be defeated, however,

by evidence that is merely colorable or is not significantly probative.") (internal quotation marks and citation omitted).

## IV. Discussion

Defendant requests summary judgment on both of Plaintiff's claims, *see generally Def.'s MSJ*, while Plaintiff seeks partial summary judgment on only its equitable subrogation claim, *see generally Pl.'s MSJ*. Because the parties simultaneously request summary judgment on Plaintiff's equitable subrogation claim, the Court assesses the evidence and arguments together for this cause of action.

### A. Equitable Subrogation

Plaintiff seeks equitable subrogation of its indemnity payment, alleging that Allstate wrongfully and unreasonably denied Spitz's workers' compensation claim. *See SAC* ¶¶ 52–53. Plaintiff alleges, among other things, that "Allstate's failures and omissions led to the Underlying Action proceeding and the subsequent settlement in the amount of $1,300,000," and that "Liberty paid $1,000,000 to settle the Underlying Action under protest[.]" *Id.* ¶¶ 55–56. Both parties seek summary judgment on this claim.

"Equitable subrogation puts the insurer in the position of the insured 'to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid.'" *Westport Ins. Corp. v. Cal. Cas. Mgmt. Co.*, 916 F.3d 769, 782 (9th Cir. 2019) (quoting *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 65 Cal. App. 4th 1279, 1291 (1998)); *Foremost Ins. Co. Grand Rapids Mich. v. Allstate Ins. Co.*, 788 F. Supp. 3d 1098, 1110 (C.D. Cal. 2025) ("An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to stand in the shoes of its insured, because it has no greater rights than the insured.") (quotation marks and citation omitted); *Nationwide Mut. Ins. Co. v. Zurich Am. Ins. Co.*, 748 F. Supp. 3d 939, 944 (E.D. Cal. 2024) (same).

"[I]n an equitable subrogation action, an excess insurer which has settled and discharged the insured's liability may recover from the primary insurer . . . if the excess insurer can prove the primary insurer's unreasonable refusal to settle within its policy limits resulted in loss to the excess insurer in an amount in excess of the policy limits of the primary insurer it would not otherwise have had." *Ace Am. Ins. Co. v. Fireman's Fund*

*Ins. Co.*, 2 Cal. App. 5th 159, 183 (2016). To succeed on this theory, Plaintiff must satisfy the following eight (8) elements:

> (a) [T]he insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer;
> (b) [T]he claimed loss was one for which the plaintiff insurer was not primarily liable;
> (c) [T]he insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable;
> (d) [T]he insurer has paid the claim of its insured to protect its own interest and not as a volunteer;
> (e) [T]he insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer;
> (f) [T]he insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends;
> (g) [J]ustice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and
> (h) [T]he insurer's damages are in a liquidated sum, generally the amount paid to the insured.

*First Mercury Ins. Co. v. Great Divide Ins. Co.*, 241 F. Supp. 3d 1028, 1041 (N.D. Cal. 2017) (quoting *Transcon. Ins. Co. v. Ins. Co. of State of Penn.*, 148 Cal. App. 4th 1296, 1305 (2007)); *see also Fireman's Fund*, 65 Cal. App. 4th at 1292 (same); *Pub. Serv. Mut. Ins. Co. v. Liberty Surplus Ins. Corp.*, 205 F. Supp. 3d 1161, 1171 (E.D. Cal. 2016) (same).

Although Defendant has challenged Plaintiff's claim on the first, fourth, and seventh elements listed above, *see Def.'s MSJ* at 11–22, the Court turns directly to the parties' causation and equity-related arguments.

*i. Causation & Balance of the Equities*

Allstate requests summary judgment, primarily attacking the first element—that its "conduct did not causally contribute to the Mitchells' alleged harm." *Def.'s MSJ* at 19.

Similar to this causation argument, *see id.* at 18–19, Defendant also challenges the seventh element and maintains that its equitable position is not inferior to that of Liberty Mutual's because it was not the cause of the Mitchells' obligations under their settlement with Spitz. *See id.* at 21–22. Plaintiff disagrees and reiterates that "[i]t was Allstate's unreasonable denial that caused the subsequent settlement." *Pl.'s Opp.* at 29, 30. Because the two elements equally depend on causation—*i.e.*, whether Allstate's acts or omissions caused Plaintiff to incur $1 million in a settlement tender to Spitz—the Court addresses both elements together under an assessment of the balance of the equities.

The seventh element concerns the parties' equities, which in turn, assesses causation. *See, e.g.*, *Great Am. All. Ins. Co. v. Cont'l Cas. Co.*, No. 23-cv-1796-BAS-JLB, 2025 WL 2323512, at *23 (S.D. Cal. Aug. 12, 2025). "The most restrictive principle is the doctrine of superior equities, which prevents an insurer from recovering against a party whose equities are equal or superior to those of the insurer." *State Farm Gen. Ins. Co. v. Wells Fargo Bank, N.A.*, 143 Cal. App. 4th 1098, 1107 (2006) (citations omitted). In other words, for Plaintiff to succeed, it must show that Defendant's equitable position is inferior to its own. *See id.*; *First Mercury Ins. Co.*, 241 F. Supp. 3d at 1041.

"[T]he aim of equitable subrogation is to shift a loss for which the insurer has compensated its insured to one who ***caused*** the loss, or who is ***legally responsible*** for the loss caused by another and whose equitable position is inferior to the insurer's." *State Farm Gen. Ins.*, 143 Cal. App. 4th at 1112 (emphases added) (citations omitted). However, balancing the equities "lacks specificity in details," as "there is no facile formula for determining superiority of equities"; there are, however, "several guideposts." *Great Am. All. Ins.*, 2025 WL 2323512, at *23 (citations omitted); *State Farm Gen. Ins.*, 143 Cal. App. 4th at 1112.

One "guidepost" is "that the right of subrogation may be invoked against a third party only if [it] is guilty of some wrongful conduct which makes [its] equity inferior to that of the surety or insurer." *State Farm Gen. Ins.*, 143 Cal. App. 4th at 1112 (cleaned up); *AMCO Ins. Co. v. All Sols. Ins. Agency, LLC*, 244 Cal. App. 4th 883, 898 (2016) (same). A second guidepost is that "an insurer seeking subrogation will always have superior equities against the party directly responsible for the loss[.]" *Great Am. All. Ins.*, 2025 WL 2323512, at *23 (citations omitted). Thus, "a subrogating insurer has two potential sources of recovery: the direct cause of loss" and "the indirect cause of the loss[.]" *State Farm Gen. Ins.*, 143 Cal. App. 4th at 1112–13. Looking to "the direct

wrongdoer"—e.g., a tortfeasor, "burglar, or fire starter"—is inapplicable here. *Great Am. All. Ins.*, 2025 WL 2323512, at *23. Instead, the Court must assess the "indirect" cause of the loss.

"Difficulties arise when weighing the equities of third parties whose conduct contributed to or permitted the loss." *State Farm Gen. Ins.*, 143 Cal. App. 4th at 1113 (citation omitted). In this situation, the Court must assess the "degrees of responsibility" borne by the third parties involved in the loss. *Id.* (citation omitted). "[W]hen the insurer sues one of these third parties, the courts still look for the party who, in good conscience, ultimately ought to bear the loss," drawing upon "concept[s] of fairness." *Id.* If a third party "dealing with a direct wrongdoer is in a better position to avoid the loss, the insurer is said to have superior equities." *Id.* This occurs when an insurer is "able to prevent a loss by adhering to certain prescribed procedures and a loss occurs because it fails to do so." *Id.*

a. Analysis

Given the parties' undisputed material facts, the Court cannot conclude that Allstate's actions *caused* Plaintiff's loss, or, put another way, that Defendant's equitable position is inferior to Plaintiff's. *See State Farm Gen. Ins.*, 143 Cal. App. 4th at 1112. First, the undisputed facts demonstrate that Allstate's third-party administrator Sedgwick had contacted Spitz on no less than two (2) occasions asking for her medical records. *See Nov. 2022 Sedgwick Letter* & *Dec. 2022 Sedgwick Letter*. Sedgwick provided Spitz with a DWC Form and multiple deadlines, however, Spitz failed to fill out the form and neither the Barnes Firm nor Spitz contacted Sedgwick. *DUMF* ¶ 11. Indeed, Spitz and the Barnes Firm did not make a demand from Allstate until at least sixteen (16) months after Sedgwick first contacted Spitz. The Court cannot conclude that Allstate is "guilty of some wrongful conduct," particularly when Sedgwick, Pastorelle, and the Purinton Law made multiple attempts to contact Spitz and the Barnes Firm. *State Farm Gen. Ins.*, 143 Cal. App. 4th at 1112; *see also Cap. Specialty Ins. Co. v. GEICO Gen. Ins. Co.*, 562 F. Supp. 3d 563, 571 (C.D. Cal. 2021) (holding that defendant-insurer did not act in bad faith after it "requested medical bills and records from Martinez for fourteen months before receiving Martinez's December 6, 2016 demand").

Additionally, the undisputed evidence reflects that Allstate followed its own prescribed procedures—it referred Spitz's claim to Sedgwick, and provided Spitz with

multiple attempts to demonstrate her workers' compensation eligibility. *See State Farm Gen. Ins.*, 143 Cal. App. 4th at 1113. The Court cannot look to Allstate as a "direct cause of [the] loss," as in opposition, Plaintiff has put forth no evidence evincing "a causal connection between [Allstate's] act or omission and [Plaintiff's] loss." *Id.* Indeed, the Sedgwick denial letter explicitly states that the "lack of substantial medical evidence" was the reason for the denial. *See Sedgwick Denial Letter*. No reasonable jury could conclude to the contrary. In opposition to Defendant's motion, Plaintiff has come forward with no evidence to the contrary, and indeed, no evidence to dispute John Sheehan's testimony that the Barnes Firm's lawsuit against the Mitchells was "unrelated" to Sedgwick's denial of Spitz's claim. *See DUMF* ¶ 16.

In its own motion, Plaintiff avers that "the loss was caused by the denial of the workers' compensation claim," that "the denial of the workers' compensation claim led to the civil action," and that "Allstate's wrongful denial led to a settlement under protest." *Pl.'s MSJ* at 18–19, 22–24 (capitalizations and boldface omitted). Allstate's Policy provided coverage to "an **insured person** as an employer of a **residence employee** all benefits when due as required by the California Workers' Compensation Law." *See Allstate Policy* at 38 (boldface in original). The workers' compensation benefits were thus contractually tied to California's workers' compensation law. "By statute, California's worker's compensation system provides an injured employee's 'exclusive' remedy against an employer for compensable work-related injuries." *King v. CompPartners, Inc.*, 5 Cal. 5th 1039, 1046 (2018) (citing Cal. Lab. Code § 3602(a)). However under California's worker's compensation law, employees have a duty to submit to a medical examination. *See* Cal. Lab. Code § 4050. The failure to do so suspends or outright bars the employee's claim. *See id.* §§ 4053, 4054; *see also Fields v. State of Cal.*, 209 Cal. App. 4th 1390, 1397 (2012).

First, Plaintiff appears to maintain that Allstate "ignore[d] evidence which supports coverage," *Pl.'s MSJ* at 19, but Plaintiff fails to address the fact that neither Spitz nor the Barnes Firm provided any medical evidence to Sedgwick—neither Sedgwick nor Allstate received any medical records pertaining to Spitz's claim. It also appears that Plaintiff believes Allstate should have immediately provided workers' compensation coverage to Spitz. *See id.* at 23. But this ignores the plain language of the Allstate Policy and California's Workers' Compensation Law, which required that Spitz proceed through a claims adjudication process. Plaintiff next complains that Allstate did not inform the Mitchells about the existence of workers' compensation coverage. *See Pl.'s MSJ* at 20;

*PUMF* ¶ 37 (undisputed that Allstate did not advise Jack Mitchell about the availability of workers' compensation coverage). Similarly, Plaintiff notes that Allstate did not keep a record of Mr. Mitchell's initial call. *Pl.'s MSJ* at 20; *PUMF* ¶ 38.[17] However, even if Allstate *did* inform the Mitchells about the availability of workers' compensation coverage, and even if Allstate *did* keep a record of the phone call with Mr. Mitchell, Plaintiff has not demonstrated how such actions would have created a different result. Nor has Plaintiff explained how, by not doing so, these actions *caused* Spitz to ignore Sedgwick's communications and decline to participate in the claims handling process. At bottom, this does this demonstrate guilty conduct necessary to tip the equities. *State Farm Gen. Ins.*, 143 Cal. App. 4th at 1112.

Plaintiff next appears to take issue with the fact that "Allstate deferred the entirety of the claim investigation to Sedgwick," while simultaneously representing that "Allstate conducted a flawed investigation, leading to a denial[.]" *Pl.'s MSJ* at 21. Yet Plaintiff has come forth with no authority stating that an insurer is prohibited from deferring a workers' compensation claim investigation to a third party. The undisputed facts show that no investigation occurred because Spitz failed to submit medical evidence of her injury.

Further, Plaintiff evinces that Defendant "did not put Liberty Mutual on notice of the civil lawsuit until days before Spitz's policy-limit demand expired." *Pl.'s MSJ* at 23. It is undisputed that the Barnes Firm sent a policy-limit demand with a thirty-day deadline to Allstate on April 10, 2024, and that Allstate notified Liberty Mutual of Spitz's claim and policy-limit demand on April 24, 2024. *PUMF* ¶¶ 78, 82. However, neither Plaintiff's motion nor reply addresses the fact that on May 9, 2024, Allstate secured a thirty-day extension for Liberty Mutual to respond to Spitz's demand by June 10, 2024. *See* Ex. 22 to *Sutherland Decl.*, Dkt. # 52-17 at 2; *see generally Pl.'s MSJ* & *Pl.'s Reply*. Per the parties' undisputed facts, Liberty Mutual had over forty-five (45) days to decide how to proceed with Spitz's demand.

Finally, the parties dispute whether Allstate is liable for its independent counsel's failure to obtain a dismissal in the underlying action based on workers' compensation exclusivity. *See Def.'s MSJ* at 19–20; *Pl.'s Opp.* at 26–28. The parties also dispute whether

[17] Though this fact is disputed, *see PUMF* ¶ 38, for the reasons stated below, the Court finds this fact immaterial.

the litigation privilege precludes liability for Allstate's failure to direct that workers' compensation be asserted as a defense. *See Def.'s MSJ* at 20–21; *Pl.'s Opp.* at 28. Plaintiff does not move for summary judgment on this causation theory, however, and in opposition, concedes that Defendant's purported "breaches were not caused by defense counsel." *Pl.'s Opp.* at 28.[18] The Court first finds Plaintiff has not shown that Sedgwick unreasonably denied workers' compensation. Plaintiff has next failed to point to any evidence evincing a conflict of interest, and, in any event, Plaintiff's concedes that it is not seeking equitable subrogation on these theories. *See Pl.'s Opp.* at 28. Accordingly, the Court need not entertain these arguments.

Taken together, the undisputed facts do not show that Allstate is "guilty of some wrongful conduct which makes [its] equity inferior to" Plaintiff's, or that Allstate is "directly responsible" for Plaintiff's loss. *Great Am. All. Ins.*, 2025 WL 2323512, at *23. The record does not demonstrate that Allstate's denial of Spitz's claim was "wrong"—instead, the undisputed evidence reflects that Allstate, through Sedgwick, Pastorelle, and the Purinton Law Firm made multiple attempts to contact Spitz and the Barnes Firm to receive her medical records. The denial letter explained that the absence of such medical records was the sole reason for denying her claim. Plaintiff has not proffered sufficient evidence for the Court to conclude that a reasonable jury could find otherwise. Without such disputed causation evidence, the Court has no alternative but to **GRANT** Defendant's Motion (Dkt. # 49) and **DENY** Plaintiff's Motion (Dkt. # 50) on these grounds.

[18] Plaintiff's opposition instead expounds that "Allstate's unreasonable denial of the [workers' compensation claim] created an inherent conflict of interest because the Mitchells were left without workers['] compensation coverage, which would chill any attempt to petition for workers['] compensation exclusivity and leave the Mitchells financially exposed without coverage." *Pl.'s Opp.* at 27. Similarly, Plaintiff argues that "Allstate did, in fact, control the [Mitchells'] defense, through appointing defense counsel to advance its desired defense strategy." *Id.* at 28. Plaintiff cites to no evidence in the record to support these assertions, and further, concedes that it is not actually advancing these theories. *See id.* at 28 ("Allstate breached its duties to the Mitchells well before defense counsel was retained, and Liberty Mutual seeks subrogation for those breaches"). The Court need not entertain these arguments.

B. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff launches a claim against Defendant for allegedly breaching the implied covenant of good faith and fair dealing when "Allstate unreasonably handled [the Mitchells'] insurance claim, by erroneously denying workers' compensation coverage . . . and subjecting the Mitchells to exposure in excess of Allstate's policy limits." *SAC* ¶¶ 62–63. Defendant requests summary judgment on this claim as well,[19] maintaining that it did not act in bad faith. *See Def.'s MSJ* at 15. As this claim rises and falls with Plaintiff's equitable subrogation claim, the Court grants summary judgment in favor of Defendant here as well.

"The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract." *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 21 Cal. App. 4th 1586, 1599 (1994) (quotation marks and citation omitted). "Without a contractual underpinning, there is no independent claim for breach of the implied covenant." *Id.* (citation omitted). In the insurance context, the California Supreme Court has enunciated "that nonparties to the insurance contract are not subject to a suit for breach of the implied covenant." *Id.* (citing *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 576 (1973)). Though "a non-contracting party is entitled to sue an insurer for breach of the implied covenant *if* that non-contracting party is a third party beneficiary of the insurance contract," *id.* (emphasis in original), here, Plaintiff's opposition does not point to any evidence demonstrating that Liberty was a third-party beneficiary to Allstate's Policy. Instead, Plaintiff's opposition rests solely on Allstate's purportedly unreasonable denial of Spitz's workers' compensation claim. *See Pl.'s Opp.* at 16–21; *see also Fireman's Fund*, 21 Cal. App. 4th at 1600 ("There is no evidence here that Fireman's qualifies as a third party beneficiary of Maryland's policy. To qualify as a third party beneficiary, the contract must be made *expressly* for the benefit of the third person.") (emphasis in original).

It is also "not enough that [Liberty Mutual] incidentally benefited from [Allstate's] contract with the insured. The fact that the . . . contract, if carried out according to its terms, would inure to the excess insurer's benefit, is not sufficient to entitle the excess insurer to demand its fulfillment." *Fireman's Fund*, 21 Cal. App. 4th at 1600 (cleaned up);

---

[19] Plaintiff only sought partial summary judgment on its equitable subrogation claim. *See generally Pl.'s MSJ*; *see also* Dkt. # 50 at 1–3.

*see also id.* ("It must appear to have been the intention of *the parties* to secure to the excess insurer personally the benefit of its provisions.") (emphasis in original) (citations omitted). Instead, "California cases have reiterated that the excess insurer's ability to sue for breach of the implied covenant rests on equitable subrogation principles, [and] not on any independent duty owed to the excess carrier." *Id.* at 1601 (footnote and citations omitted); *see also id.* ("[T]he majority of jurisdictions apparently adhere to the view that an excess insurer has rights against the primary only by way of equitable subrogation.") (citations omitted); *Am. Alternative Ins. Corp. v. Hudson Specialty Ins. Co.*, 938 F. Supp. 2d 908, 916 (C.D. Cal. 2013) ("California law allows primary and excess insurers to recover from one another for their bad faith refusal to accept a reasonable settlement offer under the theory of equitable subrogation.").

Thus, "[s]ince the only basis for [Liberty Mutual] to sue for breach of the implied covenant is by way of equitable subrogation to the insured's rights," and because the Court has already granted summary judgment on this claim in favor of Defendant, "[Liberty Mutual's] claim for breach of the implied covenant is without viability." *Fireman's Fund*, 21 Cal. App. 4th at 1603; *see also Am. Alternative Ins.*, 938 F. Supp. 2d at 916; *AIG Specialty Ins. Co. v. Phoenician LLC*, No. 2:13-cv-2578-WBS-CKD, 2014 WL 4795193, at *4 (E.D. Cal. Sept. 24, 2014) (dismissing breach of implied duty of good faith and fair dealing claim because "[a]n excess and primary insurer share no such [contractual] relationship"). Accordingly, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's breach of the implied covenant of good faith and fair dealing claim as well.

C. RJNs & Evidentiary Objections

Defendant has filed a Request for Judicial Notice ("RJN") accompanied to both its motion and opposition. *See* Dkt. # 49-2 & Dkt. # 52-26 (collectively, "*Def.'s RJNs*"). Defendant asks the Court to judicially notice a copy of the Complaint and Answer filed in the underlying action in superior court. *See Def.'s RJNs* at 1–2. Because the Court did not rely on these exhibits in ruling on either party's motion, the Court **DENIES** Defendant's RJNs as **MOOT**. *See Carr v. Walmart, Inc.*, 764 F. Supp. 3d 879, 888 (C.D. Cal. 2025); *Baker v. City of San Diego*, 463 F. Supp. 3d 1091, 1098 (S.D. Cal. 2020).

Next, the parties have each launched evidentiary objections to certain pieces of evidence relied on in the opposing party's motion and opposition briefs. *See Pl.'s Evid.*

*Objs.*, Dkts. # 51-30 & 54-1; *Def.'s Evid. Objs.*, Dkts. # 52-1 & 53-2. First, the Court did not consider the pieces of Defendant's evidence to which Plaintiff objects. These objections are overruled as moot. Moving to Defendant's objections, Allstate objects, in part, that much of Plaintiff's evidence is immaterial. The Court has already decided, *supra*, which pieces of evidence were relevant and material. These objections are moot as well. Finally, Defendant objects to several facts contained in Timothy Rosier's Declaration. The Court did not consider this testimony in assessing the parties' cross-motions.

Accordingly, both parties' evidentiary objections are **OVERRULED AS MOOT**. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010); *JAE Props., Inc. v. AMTAX Holdings 2001-XX, LLC*, 716 F. Supp. 3d 918, 930, 934 (S.D. Cal. 2024) (overruling evidentiary objections as moot because "the Court has not relied on these exhibits in reaching its decisions.").

V. Conclusion

For the foregoing reasons, the Court **ORDERS** the following:

1. Defendant Allstate Insurance Company's Motion for Summary Judgment on Plaintiff's Equitable Subrogation and Breach of the Implied Covenant of Good Faith and Fair Dealing (Dkt. # 49) is **GRANTED**.

2. Plaintiff Liberty Mutual Insurance Company's Motion for Summary Judgment (Dkt. # 50) is **DENIED**.

3. Defendant's Requests for Judicial Notice (Dkts. # 49-2 & 52-26) are **DENIED AS MOOT**. The parties' respective evidentiary objections (Dkts. # 51-30, 52-1, 53-2, 54-1) are **OVERRULED AS MOOT**.

4. The May 1, 2026 hearing is **VACATED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-10680-MWC-PVC Date: April 30, 2026

Title: Liberty Mutual Insurance Co. v. Allstate Insurance Co.

:

**Initials of Preparer** TJ